IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JOVONE ROMAN,<br><br>               Plaintiff,<br><br>vs.<br><br>KILO KIJAKAZI, Acting<br>Commissioner of the Social Security<br>Administration,<br><br>               Defendant. | CV 19-52-BLG-SPW-TJC<br><br><br>**FINDINGS AND<br>RECOMMENDATION OF<br>U.S. MAGISTRATE JUDGE** |

Plaintiff Jovone Roman ("Plaintiff"), proceeding pro se, filed a Complaint

pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial

review of the final administrative decision of the Commissioner of Social Security

(the "Commissioner") regarding the denial of his request that recovery of an

overpayment of disability insurance benefits be waived.  (Doc. 2.)  The

Commissioner filed the Administrative Record (Doc. 7) and Supplemental

Administrative Record (Doc. 26).[1]

Presently before the Court is Plaintiff's motion for summary judgment,

requesting the Court set aside the decision of the Commissioner and grant

---

[1] All citations to the Administrative Record and Supplemental Administrative
Record are to the page numbers electronically assigned by the Court's electronic
filing system.  The Court notes that the page numbers assigned by the agency
appear to be hand stamped and are illegible in several places.

Plaintiff's request for a waiver, or alternatively, remand for further administrative proceedings.  (Doc. 24.)  The motion is fully briefed and ripe for the Court's review.  (Docs. 27, 34.)

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court recommends that Plaintiff's motion be **GRANTED**, and the Commissioner's decision be **REMANDED** for further administrative proceedings.

## I.    PROCEDURAL BACKGROUND

Plaintiff began receiving disability insurance benefits ("DIB") in July 2009 due to mental health disorders, including depression, anxiety, bipolar, and schitzo effective.  (Doc. 15 at 115-120.)  In July 2016, the Social Security Administration ("SSA") notified Plaintiff that he was no longer entitled to DIB payments, and that he had been overpaid in the amount of $ 6,439.30.[2]  (*Id.* at 22.)

Plaintiff requested that recovery of the overpayment be waived.  (Doc. 15 at 28-35.)  The SSA denied his request, and Plaintiff requested a hearing before an Administrative Law Judge.  (*Id.* at 41, 43-44, 52.)  Administrative Law Judge David Willis (the "ALJ") held a hearing on December 5, 2017.  (*Id.* at 202-247.)

---

[2] The SSA later determined that Plaintiff was entitled to an additional benefit due to his work activity. (Doc. 15 at 148.) The amount was applied to his overpayment, reducing the overpayment amount to $6,195.70. (*Id.* at 18; 58.) Plaintiff does not dispute the ALJ's conclusion that the amount of $6,195.70 is correct. (*Id.* at 18.)

On May 24, 2018, the ALJ issued a written decision determining that recovery of the overpayment should not be waived, and Plaintiff was liable for repayment of $6,195.70.  (Doc. 15 at 15-20.)

Plaintiff requested review of the decision, and on March 6, 2019, the Appeals Council denied Plaintiff's request for review.  (Doc. 15 at 5.)  Thereafter, Plaintiff timely filed the instant action.

## II.   LEGAL STANDARDS

### A.   Scope of Review

The Social Security Act allows claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited.  The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error."  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance."  *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  *Flaten*, 44 F.3d at 1457.  In considering the record as a

3

whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

## B.    Applicable Law Regarding Overpayments

When a DIB recipient receives more disability benefits than he is entitled, the Commissioner may recover the overpayment. 42 U.S.C. § 404(a)(1)(A). The Commissioner may, however, waive repayment if: (1) the DIB recipient is without fault; and (2) either recovery of the overpaid benefits would defeat the purpose of Title II of the Social Security Act, or recovery of the overpaid benefits would be against equity and good conscience. 42 U.S.C. § 404(b)(1).

The Social Security regulations define fault as: (1) an incorrect statement made by the individual that he knew or should have known to be incorrect; (2) failure to furnish information that he knew or should have known to be material; or (3) acceptance of a payment that he either knew or could have been expected to know was incorrect.  20 C.F.R. § 404.507; *McCarthy v. Apfel*, 221 F.3d 1119, 1126 (9th Cir. 2000).  In making the determination of fault, the agency must "consider all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual has."  20 C.F.R. § 404.507.

The definition of "fault" as used in the Social Security regulations "applies only to the individual."  20 C.F.R. § 404.507.  Therefore, it is immaterial whether the SSA was also at fault.  "Although the Administration may have been at fault in making the overpayment, that fact does not relieve the overpaid individual . . . from liability for repayment if such individual is not without fault."  *Id.  See also McElvain v. Comm'r of Soc. Sec.*, 2016 WL 4002018, at *3 (E.D. Cal. July 25, 2016) (stating that even where "there is no question that the Commissioner was at fault . . . the inquiry for purposes of whether recovery should be waived is focused not on the Commissioner's fault, but on whether *plaintiff himself* had any fault with respect to the overpayment.").

"[T]he Commissioner bears the burden of proving the fact and amount of overpayment." *McCarthy*, 221 F.3d at 1124.  The plaintiff bears the burden of proving that he was without fault and that a waiver of repayments is warranted.  *Id.* at 1126.

## III.   FACTUAL BACKGROUND

### A.   Timeline

In July 2009, Plaintiff began receiving disability benefits.  (Doc. 15 at 115-120.)  In September 2014, he started working part-time at a dog kennel, and notified the SSA of that fact.  (*Id.* at 193-94.)  On September 30, 2014, the SSA sent Plaintiff a letter confirming it had received the information about his work activity, and stating a representative would "determine what effect this change will have on your Social Security and/or Supplemental Security Income benefits."  (*Id.* at 193.)

On November 6, 2014, the SSA sent Plaintiff a letter notifying him that he had worked in at least 1 month of his 9-month trial work period.[3]  (Doc. 15 at 133-36.)  The letter listed November 2014 as the first trial work month.  (*Id.* at 133.)  The letter further stated that the SSA scheduled his claim "for review in July 2015 since it appears that your ninth month of trial work will end at that time according to the information reported to us."  (*Id.*)  The letter also stated that Plaintiff was

---

[3] Plaintiff contends he never received the November 6, 2014 letter.

required to promptly report any changes that may affect his benefits, such as if he returned to work, if his work duties or pay changed, if his doctor said his condition improved, if he applied for workers' compensation, or if he started paying for work expenses related to his disability. (*Id.*) The letter warned that "[f]ailure to do so could mean you may have to repay any benefits not due." (*Id.*)

Under separate subheadings, captioned "Explanation of Trial Work Period" and "After Your Trial Work Period" the letter explained that Plaintiff could still get disability payments during the trial work period, and how the SSA counted months towards the trial work period. (*Id.* at 135-136.) The letter also explained that after the trial work period ended, Plaintiff's right to disability payments would continue if his "average earnings" were not over $1,070 a month. (*Id.* at 136.) The letter did not specify whether "average earnings" meant gross or net earnings. The letter did caution that if Plaintiff earned more than $1,070, "we will call your work 'substantial' and we will stop your monthly payments." (*Id.* at 136.) Notably, however, the letter did not warn Plaintiff that he might be required to repay benefits after the trial work period ended, or that he should hold any checks received after that period.

On July 22, 2015, the SSA sent Plaintiff another letter stating it found his disability was continuing, and notifying him that he had worked 8 months of his 9-month trial work period. (Doc. 15 at 137-140.) The letter identified November

2014 through June 2015 as the trial work months. (*Id.* at 137.) The letter

contained the same warning to promptly report changes about his work, and

explanation of the trial work period that were in the November 6, 2014 letter. (*Id.*

at 138-140.) Again, the letter did not warn Plaintiff that he might be required to

repay benefits after the trial work period ended.

Almost a year later, on June 21, 2016, the SSA sent Plaintiff a notice

indicating that it appeared he "may not be eligible for disability payments for:

December 2015 and continuing." (Doc. 15 at 141-44.) The letter again discussed

the trial work period. But contrary to the earlier letters, the letter identified August

2015 as the only trial work month. (*Id.* at 143.) The letter advised Plaintiff that

the SSA had not yet "decided if you can still get disability payments. You can still

give us more information about your work." (*Id.* at 141.) The letter further

advised Plaintiff that he had 10 days to provide the SSA with more information

before a final decision would be made, and warned that if he did not respond "[w]e

may decide to suspend your disability payments." (*Id.* at 142.)

On July 17, 2016, the SAA sent Plaintiff a follow-up letter stating it had

decided "your disability has ended and that you are not entitled to Social Security

disability payments beginning December 2015." (Doc. 15 at 22-25.) The letter

stated that Plaintiff's trial work period ended August 2015, and explained that

"[b]ecause we did not stop your checks until July 2016, you were paid $6,439.30 too much in benefits." (*Id.* at 22-23.)

On August 9, 2016, Plaintiff requested a waiver of the overpayment. (Doc. 15 at 28-40.) The SSA denied the request initially on August 27, 2016. (*Id.* at 41-42.) The SSA notified Plaintiff that he had the right to a personal conference, and the right to review his file before the personal conference. (*Id.* at 41.) The SSA scheduled the file review and personal conference for the same day. (*Id.*)

On September 30, 2016, the SSA sent Plaintiff a letter finding him at fault for the overpayment. (Doc. 15 at 195.) The SSA sent Plaintiff another letter on October 4, 2016, notifying him it would not waive the overpayment. (*Id.* at 196-98.) Thereafter, Plaintiff requested a hearing before an ALJ. (*Id.* at 48-52.)

## B.     The Hearing

A hearing was held before the ALJ in Boise, Idaho on December 5, 2017. (Doc. 15 at 202-47.) Plaintiff was not represented by an attorney. His sister assisted him during the hearing. (*Id.* at 205.)

Plaintiff testified that he had worked with vocational rehab who placed him at a dog kennel, and since that time he had continued to work part time at a doggie day care center. (*Id.* at 208-09, 241-43.) Plaintiff indicated that he had reported his earnings to the SSA when he started working. (*Id.* at 228.) He understood that he was required to report his earnings. (*Id.* at 228.) He was not aware, however,

that he was in a trial work period until July 2015.  (*Id.* at 211-13, 219, 228.)  He

stated the first letter he received from the SSA was the July 22, 2015 letter.  (*Id.* at

219.)  Plaintiff testified that he contacted the SSA several times after he received

the July 22, 2015 letter.  (*Id.* at 231, 247.)  He left messages, but never got a

response.  (*Id.*)  He explained that he did not hear from the SSA until a year later,

when he was notified of the overpayment in June 2016.  (*Id.* at 229.)

Plaintiff stated that due to his mental disabilities, he was unable to

comprehend the nature and consequence of the letters from the SSA, and he could

not have been expected to know the payments he received were incorrect.  (*Id.* at

207, 220-21.)  Plaintiff stated he was found to be disabled by the SSA based on

schizoaffective, depression, anxiety, and bipolar disorder.  (*Id.* at 207-08.)  Plaintiff

indicated his mental condition makes it very difficult to understand some of the

most basic things without guidance.  (*Id.* at 215, 221.)  When Plaintiff originally

applied for disability, his sister had to assist him with the application because he

had trouble understanding.  (*Id.* at 215.)  She also drafted the letters to the SSA

regarding the overpayment.  (*Id.* at 222.)   His sister also explained that Plaintiff

does not understand the basics of budgeting and finance, what a FICO score is,

how to open a savings account, or how health insurance works.  (*Id.* at 215.)  He

lived with his mother until a few months prior to the hearing, when he moved out

for the first time with a girlfriend who manages his bills.  (*Id.* at 216.)

Plaintiff stated that he is on medication for his mental disorders that effect his memory and concentration.  (*Id.* at 215.)  He had been on the medications since 2011, and was taking Citalopram and Lamotrigine at the time of the hearing.  (*Id.* at 243-44.)

Plaintiff graduated high school.  (*Id.* at 215.)  He joined the Air Force, but was discharged after a short time because of his mental disorders.  (*Id.* at 215-16, 218.)  Plaintiff acknowledged he completed avionics training while he was in the Air Force, but explained that was before he experienced a major psychological breakdown, and before he went on medication.  (*Id.* at 223.)  Plaintiff indicated that shortly before the hearing, he had been offered a promotion at the doggie day care center, but he could not handle the additional responsibilities.  (*Id.* at 221-22.) He was unable to grasp the required tasks, such as cash reporting and closing out for the day.  (*Id.*)

### C.    The ALJ's Findings

In considering Plaintiff's request for a waiver of the overpayment, the ALJ first found Plaintiff was overpaid benefits in the amount of $6,439.30 during the period of December 1, 2015 to July 1, 2016, but due to an adjustment the current amount due was $6,195.70.  (Doc. 15 at 17.)  Next, the ALJ found Plaintiff was at fault in causing the overpayment.  (*Id.* 18-20.)  Specifically, the ALJ found Plaintiff improperly accepted payments he either knew or could have been

expected to know were incorrect.  (*Id.* at 20.)  The ALJ, therefore, determined

recovery of the overpayment should not be waived, and Plaintiff was liable for

repayment of $6,195.70.  (*Id.* at 20.)

## IV.   DISCUSSION

Plaintiff argues the ALJ erred in finding he was at fault in receiving the

overpayment.  Plaintiff contends (1) the ALJ failed to consider all pertinent

circumstances, including his mental condition; (2) the ALJ erred in finding

Plaintiff had not relied on erroneous information from the SSA; and (3) the SSA

failed to properly schedule the personal conference.  The Commissioner argues

that substantial evidence supports the ALJ's determination that Plaintiff was not

entitled to a waiver of the overpayment, and any error with regard to the personal

conference was harmless.

The ALJ did not find Plaintiff was at fault on grounds that he made an

incorrect statement to the SSA or failed to furnish information to the SSA.[4]  20

---

[4]  Although the ALJ found Plaintiff reported his work activity in September 2014,
the ALJ commented that "[o]therwise, there is no objective evidence in the record,
either from the claimant or SSA, to support the claimant's allegations he timely
called SSA on several occasions." (Doc. 15 at 20.)  The ALJ's comment is not
supported by the record.  Phone records supplied by Plaintiff indicate he did call
the SSA on several occasions.  (*Compare* Doc. 26 at 6-7, 9-12; *with* Doc. 15 at
139, 193, 144) (showing Plaintiff called phone numbers provided to him by the
SSA.)  Nevertheless, the error is harmless because the ALJ did not rely on the
failure to provide information as the basis for determining Plaintiff was at fault.

C.F.R. § 404.507.  The issue in this case, therefore, is whether the ALJ's

determination that Plaintiff accepted payments he knew or should have known

were incorrect is supported by substantial evidence.  The Court finds it is not.

### A.   Consideration of Mental Condition

First, the ALJ failed to properly consider Plaintiff's mental impairments in

determining whether he was without fault.  The regulations require the ALJ to

consider all "pertinent circumstances" including the individual's "intelligence, and

any physical, mental, educational, or linguistic limitations . . . the individual has."

20 C.F.R. § 404.507.  The ALJ is required to make explicit factual findings as to

any factor that bears "any relation to the overpayment." *Anderson v. Sullivan*, 914

F.2d 1121, 1123 n.2 (9th Cir. 1990).

Here, the ALJ stated Plaintiff's "mental impairments are not cognitive, but

rather anxiety, depression, and other mental-related problems."  (Doc. 15 at 20.)

But the ALJ failed to take into consideration the impacts of Plaintiff's mental

illness, which were documented in the record.

The record shows that Plaintiff was found to be disabled by the SSA due to

"depression, anxiety, bipolar, schitzo effective."[5]  (Doc. 15 at 115.)  As a result of

these conditions, the SSA determined that Plaintiff could not handle the mental

---

[5] Symptoms associated with anxiety and depression include "difficulty
concentrating," "poor judgment and decision making," and "diminished ability to
learn and remember."  2 Attorneys Medical Deskbook §§ 25:10, 25:22.

demands of his past work or any other substantial work activity.  (*Id.* at 96.)  A

psychiatric review indicated that Plaintiff's depressive syndrome was characterized

by "difficulty concentrating or thinking," and that he had difficulties in

maintaining concentration, persistence or pace.   (*Id.* at 100, 107.)  The psychiatric

review further noted that although Plaintiff could understand and remember "very

short and simple instructions," he was limited in his ability to understand or

remember "detailed instructions."  (*Id.* at 111.)  The review also noted Plaintiff had

"adaptive skill deficits," and did not have the capacity to travel unaccompanied.

(*Id.* at 113.)  Likewise, vocational rehabilitation records state Plaintiff's mental

disabilities were "severe" and affected "multiple core functional areas."  (*Id.* at

161.)  The vocational records also noted Plaintiff had "limited judgment and/or

problem-solving skills."  (*Id.* at 159.)  These findings were corroborated by

Plaintiff's sister, when she explained at the hearing how Plaintiff's mental

impairments impacted his ability to understand matters such as applying for social

security, budgeting and finance, or how health insurance works.  (*Id.* at 215; 221-

22.)

Plaintiff also presented evidence showing that medications he takes for his

mental illness effect memory and concentration.  At the hearing, Plaintiff indicated

he takes Citalopram and Lamotrigine.[6]  (Doc. 15 at 243.)  He explained that he had been on the medications since 2011, and the Citalopram effects his memory and concentration.  (*Id*. at 244.)  The ALJ suggested Plaintiff should submit copies of his pharmacy receipts, because that would "show that you've been taking medication for your mental disabilities that causes all the things you just indicated."  (*Id.* at 245.)  Plaintiff did as instructed, and provided pharmacy receipts corroborating his testimony.  (*Id.* at 170-77.)

Thus, there is documented evidence that Plaintiff's mental illness may have interfered with his ability to understand that the payments he received were incorrect.  The ALJ ignored this evidence in reaching his fault determination.  The failure to take into account a claimant's mental illness in denying waiver of an overpayment is reversible error.  *See Dervin v. Astrue*, 407 Fed.Appx. 154, 158 (9th Cir. 2010) (noting that it would be "particularly unjust to require repayment if in fact [the claimant's] mental condition is responsible for her current predicament."); *Lewin v. Schweiker*, 654 F.2d 631, 634 n.4, 636 (9th Cir. 1981); *Martinez v. Astrue*, 2012 WL 1045230, *4-7 (D. Colo. March 28, 2012).

Moreover, the ALJ's factual findings regarding Plaintiff's cognitive abilities

---

[6] Side effects of Citalopram include impairment of the "ability to make decisions, think clearly, or react quickly."  FDA Medical Guide, available at: https://www.accessdata.fda.gov/drugsatfda_docs/label/2012/020822s042,021046s019lbl.pdf#page=32.

are not supported by the evidence in the record.  The ALJ determined Plaintiff had

the ability to understand that the payments he received were incorrect because he

"was able to complete a complex and highly technical training Air Force school."

(Doc. 15 at 20.)  But there is no evidence in the record about the training program

that Plaintiff completed in the military.  There are no records showing what the

training entailed, and the ALJ did not ask Plaintiff about it in any detail at the

hearing.  Rather, the only evidence from the military in the record shows that

Plaintiff was medically discharged due to mental illness.  (*Id.* at 95.)  The ALJ

merely assumed Plaintiff's training was "complex and highly technical" based on

his own lay opinion – which he expressed at the hearing – that "it takes a lot of

ability intellectually to get through basic and ATT – Advanced Individual

Training." (*Id.* at 223.)

    An ALJ may not rely on items not in the record in making the fault

determination.  *Albalos v. Sullivan*, 907 F.2d 871, 874 (9th Cir. 1990).  If the ALJ

wanted to rely on Plaintiff's military training, he should have developed the record

on that issue, particularly in light of the fact Plaintiff was not represented by an

attorney.  The ALJ "has an independent 'duty to fully and fairly develop the record

and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*,

242 F.3d 1144, 1150 (9th Cir. 2001) (citing *Smolen v. Chater*, 80 F.3d 1273, 1288

(9th Cir. 1996)).  "When the claimant is unrepresented, however, the ALJ must be

especially diligent in exploring for all the relevant facts." *Id.* The duty is further

heightened when "the claimant may be mentally ill and thus unable to protect [his]

own interests." *Id.* (citing *Higbee v. Sullivan*, 975 F.2d 558, 562 (9th Cir. 1992)).

Furthermore, the fact Plaintiff may have graduated from an Air Force

training school is not necessarily probative of Plaintiff's mental condition several

years later when the overpayment occurred. Even assuming Plaintiff completed a

"complex and highly technical" training school sometime prior to his discharge in

2008, that does not show he was capable of functioning at that same mental

capacity by the time of the overpayment in 2015. Indeed, the evidence in the

record suggests the opposite.

As discussed above, the SSA records show Plaintiff's mental illness

impacted his ability to concentrate and understand detailed instructions. (Doc. 15

at 96-113.) For example, the SSA determined that Plaintiff could not even handle

the mental demands of his past work as a line cook. (*Id.* at 96.) Plaintiff's sister

also explained at the hearing that Plaintiff's military training was completed before

his mental breakdown. (*Id.* at 223-24.) Additionally, evidence supplied by

Plaintiff suggests that he was no longer able to perform at a higher level. For

example, although Plaintiff was able to work at a dog day care facility, he was

unable to handle the demands of a promotion that required him to perform more

complex tasks such as receipting. (*Id.* at 178, 221-22.) The ALJ failed to consider

this testimony and evidence.

The ALJ also determined Plaintiff knew or should have known the payments he received were incorrect because he "understood his reporting responsibilities sufficiently to report new work activity." (*Id.* at 20.)  But as Plaintiff cogently explained in his response brief, his ability to understand and carry out a simple reporting instruction, does not equate to the ability to understand complex rules and calculations concerning trial work periods, substantial earnings or how to determine if payments are accurate.   Indeed, the psychiatric review shows Plaintiff can comprehend short and simple instructions, but he has difficulties with understanding or remembering detailed instructions.  (*Id.* at 111.)  As courts have noted, the Social Security Act "is complicated and difficult even for the knowledgeable to comprehend" and "without proof to the contrary . . . the [Commissioner] cannot arbitrarily assume that plaintiff understood its application to his particular situation." *Pickman v. Astrue*, 2009 WL 2216144, * (N.D. Cal. July 23, 2009) citing *Lewin*, 654 F.2d at 634 n.4.  Here, there is no evidence that Plaintiff had the ability to understand anything more than a simple reporting instruction.  The ALJ's finding, therefore, is not supported by the evidence in the record.

Accordingly, the Court finds the ALJ erred in failing to fully consider all pertinent circumstances, including Plaintiff's mental illness.

**B.    Plaintiff's Reliance on Erroneous Information**

Second, the ALJ erred in finding there was no evidence to suggest Plaintiff relied on erroneous information from the SSA.  The Regulations provide that where an individual accepts an overpayment because of reliance on erroneous information from an official source with the SSA, the individual will be deemed to be without fault.  20 C.F.R. § 404.510a.  Here, the ALJ found there was no evidence to suggest Plaintiff relied on such information.  (Doc. 15 at 20.)

Plaintiff argues the letters he received from the SSA are confusing and did not accurately inform him that he could be liable for an overpayment following his trial work period.  The Court agrees.

The letters the SSA sent Plaintiff informed him that that had to report work or work changes, and that the failure to do so could result in an obligation to repay benefits.  (Doc. 15 at 133, 138.)  The letters also included information about the trial work period.  (*Id.* at 135-36, 139-40.)  But the letters did not warn Plaintiff that he may have to repay benefits after the expiration of the trial work period.  To the contrary, the letters stated the SSA "will stop your monthly payments" if the SSA deemed Plaintiff's earnings "substantial" after the trial work period.  (*Id.* at 136, 140.)  As courts have acknowledged,  "the mere passage of a nine-month trial period, without an administrative determination of the plaintiff's capacity to engage in substantial gainful activity, should not suffice to remove a person's

disability status." *Frasier v. Harris*, 495 F.Supp.260, 263 (D. Colo. 1980); *See also Lieberman v. Shalala*, 878 F.Supp. 678, 681 (S.D. N.Y. 1995) ("Although the notification advised that the trial-work period would expire in November 1989, it did not suggest that her disability benefits would terminate at that time.").  Thus, absent such a determination at the end of the trial work period, Plaintiff would have "had no reason to believe that []he was no longer eligible for disability benefits." *Frasier*, 495 F.Supp. at 263.

Further, the Court notes the letters are inconsistent with regard to the trial work period.  In July 2015, the SSA informed Plaintiff it had counted eight trial work months towards his trial work period.  (*Id.* at 137.)  Yet in June 2016, the SSA stated it had counted only one trial work period month.  (*Id.* at 143.)  Where, as here, the letters from the SSA are inconsistent and confusing, it would not be reasonable to assume that an individual with documented mental disorders would have the ability to decipher that his payments were incorrect.  *Lewin*, 653 F.2d at 634 n.5 (noting the Social Security Act "is a maze of complicated terms and cross references which can easily confuse the practicing attorney, much less . . . other untrained beneficiaries.").

The Court therefore finds the ALJ's finding regarding Plaintiff's reliance on information from the SSA is not supported by substantial evidence.

/ / /

### C.   Personal Conference

Plaintiff correctly argues the SSA erred with regard to the scheduling of the personal conference.  The Regulations provide that when an initial request for waiver of an overpayment is denied, the SSA will afford the individual an opportunity to review their file and have a personal conference with a representative from the SSA.  20 C.F.R. § 404.506(d).  The Regulations specifically state that "[t]he file review is always scheduled at least 5 days before the personal conference." *Id.*  Here, however, the SSA scheduled the file review and personal conference for the same day, just 15 minutes apart.  (Doc. 15 at 41 (setting file review on September 2, 2016 at 9:45 a.m. and personal conference on September 2, 2016 at 10:00 a.m.).)  This scheduling clearly conflicts with the requirements of the Regulation.  Nevertheless, the Court finds the error is harmless.

"Reversal on account of error is not automatic, but requires a determination of prejudice.  The burden is on the party claiming error to demonstrate not only the error, but also that it affected his 'substantial rights,' which is to say, not merely his procedural rights." *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). The decision from the personal conference was not the Commissioner's final decision.  Plaintiff requested a hearing before an ALJ, and had the opportunity to present evidence, testify, and argue his case.  (Doc. 15 at 202-247.)  Thus, to the

extent the improper scheduling negatively affected the outcome of the personal

conference, the error was cured when Plaintiff's waiver request was reviewed de

novo by the ALJ.

Accordingly, the Court finds no reversible error with regard to the personal

conference.

## V.    REMAND OR REVERSAL

For the foregoing reasons, the Court finds the ALJ's finding of fault is not

supported by substantial evidence.  Plaintiff requests the Court reverse and direct

the Commissioner to waive the claim for repayment, or alternatively, remand for

further administrative proceedings.  The decision whether to reverse or remand a

case for additional proceedings is within the discretion of the court.  *Reddick v.*

*Chater*, 157 F.3d 715, 728 (9th Cir. 1998).  If the ALJ's decision "is not supported

by the record, 'the proper course, except in rare circumstances, is to remand to the

agency for additional investigation or explanation.'"  *Hill v. Astrue*, 698 F.3d 1153,

1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir.

2004)).  Because the ALJ determined Plaintiff was at fault, he did not reach the

issue of whether recovery would defeat the purposes Title II of the Social Security

Act or be against equity and good conscience.  42 U.S.C. § 404(b)(1).  Therefore,

the record has not been fully developed.  As such, the Court finds remand for

further proceedings is appropriate.

## VI.   CONCLUSION

Accordingly, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment (Doc. 24) be **GRANTED**, and this matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of the United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after receipt hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 23rd day of May, 2022.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge